# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| REALTIME TRACKER, INC., | : | |
| | : | |
| Plaintiff, | : | No. 1:21-cv-08815-PAE |
| | : | |
| v. | : | Judge Paul A. Engelmayer |
| | : | |
| RELX INC. | : | Magistrate Judge Barbara C. Moses |
| | : | |
| Defendant. | : | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
THE COMPLAINT UNDER RULE 12(b)(6)**

Ross A. Wilson (NY Bar # 5013107)
Oleg Khariton (*pro hac vice* admission pending)
DINSMORE & SHOHL LLP
255 Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
ross.wilson@dinsmore.com
oleg.khariton@dinsmore.com
*Attorneys for Defendant RELX Inc.*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS .......................................................................................................ii

TABLE OF AUTHORITIES ...............................................................................................iii

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 2

       A.     The Purported Invention of the '810 Patent ...............................................2

       B.     The Asserted Claims of the '810 Patent .....................................................5

       C.     The Accused Software .................................................................................6

III.   LEGAL STANDARDS ............................................................................................. 7

       A.     Pleading Infringement Under *Iqbal/Twombly* .........................................7

       B.     Patent Eligibility .........................................................................................8

IV.    ARGUMENT ........................................................................................................... 11

       A.     The Complaint Fails to Plausibly Allege Infringement of the '810 Patent............11

       B.     The '810 Patent Is Drawn to Patent-Ineligible Subject Matter..............................15

              1.     Claim 29 Is Representative for Purposes of § 101 Analysis......................15

              2.     *Alice* Step One: The Asserted Claims Are Directed to an Abstract
                     Idea...................................................................................................16

              3.     *Alice* Step Two: The Asserted Claims Lack an "Inventive
                     Concept" Sufficient to "Transform" the Abstract Idea Into a
                     Patent-Eligible Application........................................................................20

V.     CONCLUSION........................................................................................................ 22

## TABLE OF AUTHORITIES

### Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018) ..................................................................... 11

*Accenture Glob. Servs. v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................ 18, 21

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ............................................................................. *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ..................................................................... 10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 7

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ........................................................................................ 8

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) .................................................................... 8, 15

*Colida v. Nokia Inc.*,
   07 Civ. 8056 (KMW)(HBP), 2008 U.S. Dist. LEXIS 129521 (S.D.N.Y. May 6, 2008) .......... 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ..................................................................... 16

*Credit Acceptance Corp. v. Westlake Servs.*,
   859 F.3d 1044 (Fed. Cir. 2017) ..................................................................... 19

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020) ................................................................ 10, 19

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ..................................................................... 20

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ........................................................................................ 9

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) ..................................................................... 22

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529 (Fed. Cir. 2020) ........................................................................... 19

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................... 9, 20

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018) ......................................................................... 10, 19

*Funk Brothers Seed Co. v. Kalo Inoculant Co.*,
    333 U.S. 127 (1948) ................................................................................................ 9

*Gharb v. Mitsubishi Elec. Automation, Inc.*,
    No. 10 C 07204, 2012 U.S. Dist. LEXIS 76727 (N.D. Ill. June 4, 2012) ................................ 15

*Gottschalk v. Benson*,
    409 U.S. 63 (1972) ............................................................................................... 22

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ..................................................................... 9, 17, 22

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ........................................................................... 19

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ....................................................................... 11, 22

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ........................................................................................ *passim*

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ............................................................................. 9

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016) ....................................................................... 15, 20

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ........................................................................... 8, 13

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ........................................................................... 22

*Quantum Stream, Inc. v. Charter Communs., Inc.*,
    309 F. Supp. 3d 171 (S.D.N.Y. 2018) ..................................................................... 22

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ....................................................................... 11, 21

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ................................................................................. 20

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013) .................................................................. 8, 14

*Univ. of Fla. Research Found., Inc. v. GE Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) ......................................................................... 19, 20

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ............................................................................ 9, 11

*WalkMe Ltd. v. Pendo.io, Inc.*,
    No. 18cv7654 (DLC), 2019 U.S. Dist. LEXIS 59036 (S.D.N.Y. Apr. 4, 2019) ...................... 10

*WhitServe LLC v. Donuts Inc.*,
    809 F. App'x 929 (Fed. Cir. 2020) ............................................................... 17, 18, 20

## <u>Statutes</u>

35 U.S.C. § 101 ................................................................................................... *passim*

## I.    INTRODUCTION

This lawsuit, in which Plaintiff Realtime Tracker, Inc. ("Realtime") accuses Defendant RELX Inc. ("RELX") of infringing U.S. Patent No. 8,229,810 (the "'810 Patent"), is meritless from the get-go.  Realtime's purported invention is a time-tracking software for professionals who bill clients by the hour.  This software purports to automate the timekeeping process by (1) detecting when a professional starts a new task (for example, opens a document on her computer or makes a telephone call) and (2) generating an electronic time entry box on the professional's computer screen with an automatic timer for monitoring, in "real time," the time spent by the professional on the task.  Realtime claims that RELX, through its LexisNexis division, has infringed the '810 Patent with its "Juris Suite" software.  The Court should dismiss this suit under Federal Rule of Civil Procedure 12(b)(6), with prejudice, for two separate reasons.

First, the Complaint fails to plausibly allege infringement.  To support its contention that Juris Suite infringes the '810 Patent, the Complaint links repeatedly to LexisNexis' instructional video for Juris Suite users.  However, far from supporting Realtime's allegations, this video affirmatively disproves infringement.  The '810 Patent requires a computer program to be capable of "detecting" *on its own* when the end user begins a new billable task.  The Juris Suite instructional video refutes any suggestion that Juris Suite operates in this way because it clearly shows that a user has to manually activate the time-tracking function in Juris Suite whenever starting a billable task.  Since Realtime's own supporting materials establish that infringement is impossible (not to mention implausible), dismissal under Rule 12(b)(6) is warranted.

Second, the '810 Patent is invalid under 35 U.S.C. § 101 because its purported invention is not eligible for patent protection.  The patent does not describe any technological advance but instead purports to claim a mere "abstract idea"—precisely the type of "invention" Supreme Court precedent, including *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014),

1

excludes from the scope of patent protection available under § 101.  Indeed, the patent takes a routine business practice familiar to many professionals (tracking time spent on billable client-related tasks) and simply automates this abstract idea using a generic computer.  After *Alice*, however, it is settled that such generic computer implementation of longstanding business practices is not eligible for patenting as a matter of law.  Because the '810 Patent—which was allowed by the U.S. Patent and Trademark Office in 2012, two years before the Supreme Court's *Alice* decision—is invalid, the Complaint should be dismissed for failure to state a claim.

## II.    BACKGROUND

### A.    The Purported Invention of the '810 Patent

The '810 Patent[1] observes that "[m]any attorneys and other billing professionals do not record time expended for rendering professional services contemporaneous with the task or service performed," which results in "time being lost and never billed due to the inability to remember the task performed or the amount of time spent for performing the task."  ('810 Patent at 1:37-46.)  The patent's purported solution is a computer program for "generating and tracking time expended by professionals in providing services to their clients on a realtime basis."  (*Id.* at Abstract.)  The way this computer program operates is by "generat[ing] a timekeeper entry box" on the professional's computer screen for "each document, task or other service (LAN or Internet-based) performed by the professional."  (*Id.* at 2:26-33.)  The box contains fields for entry of a "client identifier (client name or billing number)" and other information, such as "date, document type, description of task being performed and billing professional identifier."  (*Id.* at 2:33-38.)  It also has a "time computation feature," which "automatically start[s]" when the user begins a new task and "automatically cease[s]" when the task is terminated.  (*Id.* at 2:61-65.)

---

[1] A copy of the '810 Patent is attached as Exhibit 1 to the Complaint.

Below is Figure 3 from the patent showing an example of a timekeeper entry box:



In Figure 3, the timekeeper entry box **300** is generated, and the "Start Time" field is automatically populated, "[c]ontemporaneous with the opening of e-mail **310**." ('810 Patent at 6:1-8.)  When the end user sends, saves, or closes out of the e-mail (or hits the "End" button), the "program records End Time **350** for the session and Total Time **360**," and the timekeeper entry box "closes and the information generated in the box is stored by the program." (*Id.* at 6:37-43.)

Figure 8 from the patent describes a "flow scheme of the invention":



FIG. 8

3

The computer program first "detects that a document is opened or the initiation of a service or task" in step **800** and then "generates a Timekeeper Entry Box™ contemporaneous with the opening of the document or initiation of service/task" in step **805**.[2] ('810 Patent at 8:9-14.) Once the timekeeper entry box is generated, the computer program "automatically starts the time computation corresponding to the specific professional service undertaken by the individual professional" in step **810**. (*Id.* at 8:14-18.)

The specification explains that the invention can be implemented using generic computer components. For example, in describing a "computer device **100** for use in the invention," the specification explains that its "primary component" is a "processor (CPU) **105**, which may be any commonly available micro-processor." ('810 Patent at 2:58-61.) This generic processor may be "operatively connected to further exemplary components, such as random access memory (RAM)/read-only memory (ROM) **110**, clock **115**, input/output devices **120** and memory **125**." (*Id.* at 4:50-55.) The specification similarly describes all of these additional "exemplary components" in generic terms. (*See, e.g.*, *id.* at 5:7-9 (explaining that "exemplary input devices may include a keyboard, a mouse, a voice recognition unit and the like for receiving operator inputs"); *id.* at 5:9-11 (explaining that "suitable output devices may include a display, a printer and a voice synthesizer connected to a speaker"); *id.* at 5:26-31 (explaining that "memory **125"** may be a "floppy disk in conjunction with a floppy disk drive, hard disk drive, a CD-ROM disk and reader/writer, a DVD disk and reader/writer, a ZIP disk and a ZIP drive, and/or any other computer readable medium that may be encoded with processing instructions in a read-only or read-write format").)

---

[2] In some embodiments, upon detecting the start of a new activity by the end user and prior to generating a timekeeper entry box, the computer program asks the end user for confirmation that the activity should be billed. ('810 Patent at 8:39-43.) Consequently, the flow chart in Figure 8 includes an optional step **855** between steps **800** and **805** for "Request Timekeeper Entry."

**B.    The Asserted Claims of the '810 Patent**

The Complaint accuses RELX of infringing claims 1-4, 7, 8, 18-21, 23, 24, 26, 28, 29, and 31 of the '810 Patent.  (Complaint at ¶ 23.)  Of these claims, six are independent: claims 1, 18, 26, 28, 29, and 31.  The remainder are dependent claims: claims 2-4, 7, and 8 depend on claim 1, and claims 19-21, 23, and 24 depend on claim 18.

The Complaint provides "exemplary" claim charts for independent claims 29 and 31. (Complaint at ¶ 23.)  These two claims are substantially similar and, boiled down, describe an "individual realtime billable timekeeping/timekeeper" software program for: (1) "detecting initiation of at least one telephone call" and (2) "generating an individual timekeeper entry box," which contains entries for a "personal code" and "client identifier," and which "contemporaneously tracks time" spent by the end user on the telephone call.  These common elements are shown in bold red font in the chart below:

| Claim 29, '810 Patent | Claim 31, '810 Patent |
|---|---|
| 29. A method for **individual realtime billable timekeeping** using a computer, comprising a computer program for: | 31. A computer readable medium having computer executable software code stored thereon for an **individual realtime billable timekeeper**, comprising: |
| **detecting initiation of at least one telephone call**; and | code for **detecting initiation of at least one telephone call**; and |
| **generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis** using the computer. | code for **generating an individual timekeeper entry box including an entry for a personal code and a second entry for a client identifier corresponding to said at least one telephone call wherein said individual timekeeper entry box contemporaneously tracks time associated with said personal code and said client identifier of said telephone call to track time for an individual by client on a telephone call by telephone call basis**. |

5

The remaining four independent claims (claims 1, 18, 26, and 28) describe software with the exact same two basic functions, except that they are concerned with detecting and tracking time for other types of tasks: claims 1 and 18 focus on the "opening of at least one document," while claims 26 and 28 speak more broadly of the "initiation of at least one client-service." ('810 Patent at 9:60-10:3, 11:1-12, 11:42-52, 12:1-14.)

In addition to incorporating all of the limitations of the independent claims from which they depend, dependent claims 2-4, 7, 8, 19-21, 23, and 24 require certain additional information and/or features to be included in the "individual timekeeper entry box." (*See, e.g.*, '810 Patent at 10:18-22 (claim 7 requiring "displaying at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description within said individual timekeeper entry box").)

### C.    The Accused Software

The Complaint alleges that RELX, through its LexisNexis division, has infringed the asserted claims of the '810 Patent by "manufactur[ing], us[ing], offer[ing] for sale, licens[ing] and/or sell[ing]" its Juris Suite software. (Complaint at ¶ 20.) Juris Suite is "designed to help firms conduct business beyond the day-to-day transactions and monthly billing." (Ex. 3 to Complaint at 1.) It features a "Time and Expenses" module, which provides timekeepers with a "time management platform for keeping detailed time records." (Complaint at ¶ 20 (quoting Ex. 3 at 2).) The "Time and Expenses" module includes a "time entry screen," complete with a "Timer" feature, for tracking an employee's billable time. (*Id.*)

To support its infringement allegations, the Complaint relies heavily on a LexisNexis instructional video describing the use of the Juris Suite Timer functionality. (*LexisNexis Juris Suite Timers*, YouTube (Jan. 21, 2016), https://www.youtube.com/watch?v=IqsLXL88ja8 ("Juris Suite Video").) The Complaint refers to this video no less than 10 times and includes multiple

screenshots from it.  (*See, e.g.*, Complaint at ¶¶ 23, 24.)  However, what the Juris Suite Video shows is that, in fact, the Juris Suite software does not automatically "detect[]" the start of a new activity by the end user.  Instead, to track her billable hours in real time using the Timer feature, a Juris Suite user has to manually activate the Timer by first clicking a button on the Juris Suite screen to open a time entry window and then clicking another button to actually start the Timer:



(*See* Juris Suite Video at 0:37-1:00 ("To use this [Timer] feature, you can either start a new entry or, in this case, I'm going to open up an existing time entry.  [Clicks button to open a time entry.] Say I was working on this case, and I got a phone call from the client.  Well, the feature I'm referring to is right up at the top.  It's a timer display, and it's got a series of buttons.  If I click on this green 'Start Timer' button, notice the timer is off and running.").)

## III.  LEGAL STANDARDS

### A.    Pleading Infringement Under *Iqbal*/*Twombly*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*  "[A] plaintiff cannot assert a plausible claim for [patent] infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021).  "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."  *Id.*  If the "factual allegations are actually *inconsistent* with and contradict infringement, they are likewise insufficient to state a plausible claim."  *Id.* (emphasis in original).

"A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks and citations omitted) (collecting cases).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint."  *Id.*  "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."  *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592-93 (S.D.N.Y. 2013) (internal citation omitted).

### B.    Patent Eligibility

The Patent Act describes four categories of patent-eligible subject matter: processes, machines, manufactures, and compositions of matter.  35 U.S.C. § 101.  Long-standing judicial exceptions, however, prevent patents from claiming abstract ideas, laws of nature, or natural phenomena.  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012).  The "concern" underling these exceptions is "pre-emption."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (citing *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010)).  Abstract ideas, laws of nature, and natural phenomena are the basic building blocks of science, the

monopolization of which "might tend to impede innovation more than it would tend to promote it." *Id.* (quoting *Mayo*, 566 U.S. at 71). Thus:

> [A] new mineral discovered in the earth or a new plant found in the wild is not patentable subject matter. Likewise, Einstein could not patent his celebrated law that E=mc2; nor could Newton have patented the law of gravity. Such discoveries are "manifestations of . . . nature, free to all men and reserved exclusively to none."

*Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (quoting *Funk Brothers Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)). When applying the § 101 exceptions, a court "must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 573 U.S. at 217 (internal citations, quotation marks, and brackets omitted). The *Alice* decision articulated a two-step test to guide the § 101 inquiry. *Id.* at 217-18.

The first step of the *Alice* test requires a court to determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. 573 U.S. at 218. "[T]he claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)). The Supreme Court has not defined a specific rule for determining what constitutes an "abstract idea" within the meaning of the first step of the *Alice* test. "Rather, both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Abstract ideas include "fundamental economic practice[s] long prevalent in our system of commerce,' *Alice*, 573 U.S. at 219-20, and "methods of organizing human activity." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015). For example, in *Alice*, the Supreme Court held

9

that computer-based implementation of the fundamental economic practice of mitigating

settlement risk using a third-party intermediary represented an abstract idea.  573 U.S. at 219-20.

For software patents, the inquiry at *Alice* step one "often turns on whether the claims focus on

'the specific asserted *improvement in computer capabilities* . . . or, instead, on a process that

qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'"  *Customedia*

*Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020) (emphasis added)

(quoting *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018)).

      If the claims are directed to a patent-ineligible concept, the second step of the *Alice* test

requires "examin[ing] the elements of the claim to determine whether it contains an 'inventive

concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."

573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72).  If there is no inventive concept, the claim is

invalid under § 101.  *Id.*  For software patents that use generic computer technology, the

analytical issues underlying *Alice* step two overlap substantially with *Alice* step one.  *See, e.g.*,

*WalkMe Ltd. v. Pendo.io, Inc.*, No. 18cv7654 (DLC), 2019 U.S. Dist. LEXIS 59036, at *21

(S.D.N.Y. Apr. 4, 2019); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288,

1294 (Fed. Cir. 2016) (explaining that "there is considerable overlap between step one and step

two").  Thus, "if a patent's recitation of a computer amounts to a mere instruction to

'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent

eligibility."  *Alice*, 573 U.S. at 223 (quoting *Mayo*, 566 U.S. at 84).  "This conclusion accords

with the pre-emption concern that undergirds [the] §101 jurisprudence."  *Id.*  "[W]holly generic

computer implementation is not generally the sort of 'additional featur[e]' that provides any

'practical assurance that the process is more than a drafting effort designed to monopolize the

[abstract idea] itself.'"  *Id.* at 223-24 (*Mayo*, 566 U.S. at 77).

Patent eligibility under § 101 is a question of law that may contain underlying issues of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). Eligibility can be determined at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Universal Secure*, 10 F.4th at 1346 (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)). In ruling on eligibility at the Rule 12(b)(6) stage, "a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal citation omitted).

## IV.    ARGUMENT

The Court should dismiss the Complaint in its entirety, with prejudice, for two separate reasons. First, the Complaint fails to plausibly allege that Juris Suite infringes the '810 Patent. Not only does the "evidence" cited in the Complaint fail to support Realtime's infringement allegations, but it affirmatively precludes any suggestion that Juris Suite operates in an infringing manner, since it shows that the accused software itself does not "detect[]" new billable activity by the end user. Second, the asserted claims are drawn to patent-ineligible subject matter and are therefore invalid under § 101. The claims fail *Alice* step one because they are directed to the abstract idea of tracking time spent on billable tasks. And the claims fail *Alice* step two because they do nothing to "transform" this basic abstract idea into a patent-eligible "inventive concept." Instead, the claims simply apply the abstract idea using a generic computer, which precedent holds is insufficient to confer patent eligibility on an otherwise patent-ineligible concept.

### A.    The Complaint Fails to Plausibly Allege Infringement of the '810 Patent.

The '810 Patent concerns timekeeping software that operates by (1) "detecting" when an end user initiates a new billable activity (for example, a new telephone call) and (2) "generating

an individual timekeeper entry box" for "contemporaneously track[ing]" the time spent by the

end user on that activity. Each asserted claim contains these two basic elements. (*See supra* at

5-6.) Importantly, the claims are clear on their face that the claimed software itself must be

capable of performing the first, "detecting" step. Thus, every asserted independent claim

describes either a "computer program for[] detecting" a new activity (claims 1, 26 and 29) or

"computer executable software code" comprising "code for detecting" such activity (claims 18,

28, and 31). ('810 Patent at 9:60-62, 11:1:4, 11:42-44, 12:1-4, 12:15-17, 12:41-44.) That is to

say, the "detecting" step is not a mental step to be performed by the end user but a function

carried out automatically by the software. The Complaint confirms the automated nature of the

"detecting" step when it describes "[a]ll" of the patent's claims as being "directed to

*automatically* tracking billable time for an individual using a computer generated timekeeper

entry box by personal code and client identifier on a document-by-document, service-by-service

or telephone call-by-telephone call basis in realtime." (Complaint at ¶ 11 (emphasis added).)

      This automation is, in fact, the whole purpose of the alleged invention. The patent's

specification describes the problem to be solved as the "absence of a computer system which

monitors billable time for every document generated and/or task undertaken during the course of

a given day contemporaneous with the service being performed," which results in "time being

lost and never billed due to the [professional's] inability to remember the task performed or the

amount of time spent for performing the task." ('810 Patent at 1:41-52.) The patent purports to

solve this problem with a "computer method, system and apparatus for generating and tracking

time expended by professionals in providing services to their clients on a realtime basis." (*Id.* at

Abstract.) In other words, it purports to make timekeeping easier for professionals by

automating the timekeeping process. This automated process always begins with the computer

program "detecting" new billable activity.  (*See, e.g.*, *id.* at Fig. 8.)  The patent's specification

describes no embodiment of the alleged invention where the *end user* has to "detect[]" a new

billable task and then manually activate the computer program.  It only describes embodiments

where new billable activity is automatically "detect[ed]" by the computer program.[3]

By contrast to the express requirement of the asserted claims, the accused Juris Suite

software does not "detect[]" the start of a new activity by the end user.  To verify this, one need

look no further than the Juris Suite Video repeatedly referenced throughout the Complaint.[4]  As

clearly shown in the video, a Juris Suite user who wants to monitor her billable hours in real time

has to click a button on the Juris Suite screen to open a new or existing time entry window before

clicking another button to start the Timer feature.  (*See supra* at 7.)  So, with Juris Suite, it is the

*end user* who has to realize that she is engaged in a billable task and then manually activate the

Timer functionality by clicking multiple buttons (one to open a time entry window and then

---

[3] *See, e.g.*, '810 Patent at 8:9-11 ("FIG. 8 is an embodiment of a flow scheme of the invention. In Step **800**, *the invention detects* that a document is opened or the initiation of a service or task." (Emphasis added)); *id.* at 8:48-52 ("*The software program of the invention further is capable of detecting* the service or task being performed by the individual professional and extracting pertinent information relating to each type of search being performed for inclusion in the "Timekeeper Entry Box™." (Emphasis added)); *id.* at 8:57-58 ("In FIG. 9, *the invention detects* the task being performed by the professional in Step **900**." (Emphasis added)); *id.* at 9:4-7 ("For example, in Step **930**, *the invention detects* a service being performed relating to an e-mail and extracts pertinent information from the e-mail headers or the harddrive or other source relating to the e-mail." (Emphasis added)); *id.* at 9:11-15 ("In Step **935**, *the invention detects* a new LAN document being generated by a professional individual and extracts pertinent information from the document's profile or harddrive or other source relating to the newly generated LAN document." (Emphasis added)); *id.* at 9:17-20 ("In Step **940**, *the invention detects* the editing of an existing LAN document and extracts pertinent information from the document's profile, metadata or harddrive or other source relating to the edited document." (Emphasis added)); *id.* at 9:21-23 ("In Step **945**, *the invention detects* a research session and extracts a client identifier, professional's code or other pertinent information from the search session." (Emphasis added)); *id.* at 9:24-27 ("In Step **950**, *the invention detects* a telephone call and extracts a caller ID, client identifier, professional's code, voice recognition information or other pertinent information relating to the telephone call." (Emphasis added)).

[4] The Court can properly consider the full contents of the Juris Suite Video in ruling on this motion. Given the extent to which Realtime relies on the video, it is, at the very minimum, "integral" to the Complaint, if not effectively incorporated in the Complaint by reference.  *Nicosia*, 834 F.3d at 230.

another to start the Timer).  The Juris Suite software *itself* does not "detect[]" a new billable activity by the end user.  And since the Juris Suite software does not perform the "detecting" function, it cannot infringe any of the asserted claims of the '810 Patent.

As it happens, the Complaint does even explicitly allege that Juris Suite is capable of "detect[ing]" a new task by the end user.  The "exemplary" claim chart for claim 29 rather alleges, confusingly, that the "Juris® Suite Time Entry screen enables detecting initiation of a telephone call . . . upon clicking on the start timer button."  (Complaint at ¶ 23.)  But what does that mean?  Who or what is being "enable[d]" by the Juris Suite time entry screen to "detect[]" initiation of a telephone call?  If it is the end user, how does the Juris Suite time entry screen "enable[]" the end user to "detect[]" a telephone call "upon clicking on the start timer button"?  The Complaint does not say.  What is more, Realtime's allegations simply do not align with the actual claim language.  The claims do not describe a "computer program for enabling an end user to detect" the initiation of a new task, whatever that means.  Rather, they expressly describe a "computer program for[] detecting," or "[software] code for detecting," new activity by the end user.  (*See supra at* 5-6.)  Thus, the software program *itself* has to be capable of "detecting" such activity.  The Complaint does not seem to allege that Juris Suite actually has this functionality.

Regardless, the Complaint would not fare any better even if it had stated, unequivocally, that the Juris Suite software is capable of "detecting" the initiation of a telephone call or another client-related task.  The Court would be under no obligation to accept such an allegations as true, because it would still be directly contradicted by the Juris Suite Video, which shows that Juris Suite does not operate in this manner.  *TufAmerica*, 968 F. Supp. 2d at 592-93.  In light of this, Realtime's infringement claim is not only implausible but altogether impossible, and no amount of discovery would solve this problem for Realtime.

14

Where the contents of a complaint are "actually *inconsistent* with and contradict infringement," the complaint is, by definition, "insufficient to state a plausible claim" for infringement. *Bot M8*, 4 F.4th at 1354 (emphasis in original). In *Bot M8*, for example, the patent concerned gaming machines and required that a "game program" and "authentication program" be stored on the same circuit board, separate from the "motherboard." *Id.* Because the complaint alleged *away* from infringement by asserting that the "authentication program" of the accused device was stored in its "flash memory," which the complaint admitted was contained in the "motherboard," the Federal Circuit affirmed the district court's dismissal of the complaint. *Id.* Dismissal is no less warranted where the plaintiff's infringement allegations are contradicted by matters external to the four corners of the complaint but which are properly considered on a Rule 12(b)(6) motion. *See, e.g.*, *Colida v. Nokia Inc.*, 07 Civ. 8056 (KMW)(HBP), 2008 U.S. Dist. LEXIS 129521, at *13-23 (S.D.N.Y. May 6, 2008) (recommending dismissing a complaint for design patent infringement where a picture of the accused device attached as an exhibit to the complaint contradicted infringement), *adopted in relevant part by* 2008 U.S. Dist. LEXIS 75450 (S.D.N.Y. Sep. 26, 2008); *Gharb v. Mitsubishi Elec. Automation, Inc.*, No. 10 C 07204, 2012 U.S. Dist. LEXIS 76727, at *7-8 (N.D. Ill. June 4, 2012) (dismissing a complaint where the patent claims described a "security system," but the exhibits attached to the complaint identified the accused product as "programmable logic controllers," not "security systems"). Because Realtime's allegations of infringement are directly contradicted by the Juris Suite Video upon which it so heavily relies, the Court should dismiss the Complaint with prejudice.

**B.    The '810 Patent Is Drawn to Patent-Ineligible Subject Matter.**

**1.    Claim 29 Is Representative for Purposes of § 101 Analysis.**

When an exemplary claim is available, there is no need to address the patent eligibility of the asserted claims individually. *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d

1314, 1324 n.6 (Fed. Cir. 2016) (noting that in *Alice* the Supreme Court found "208 claims to be patent-ineligible based on analysis of one representative claim"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (affirming the district court's decision not to address each asserted claim individually because the claims were "substantially similar and linked to the same abstract idea").

Here, independent claim 29 (one of two "exemplary" claims specifically addressed in the Complaint) is sufficiently representative of the asserted claims of the '810 Patent.  Like all of the other asserted independent claims, claim 29 describes a computer program for "individual realtime billable timekeeping" capable of performing two basic functions: "detecting" a certain new activity by the user (in claim 29, the "initiation of at least one telephone call") and "generating an individual timekeeper entry box," which includes entries for a "personal code" and "client identifier," for "contemporaneously track[ing] time" spent by the user on that activity.  As to the dependent claims, none of them add any meaningful limitations.  Instead, they merely describe certain additional information or features to be included in the "individual timekeeper entry box" (for example, "at least one of a start time, an end time, a total time, a date, a client identifier, a personal code, a document type, an author identifier, a recipient identifier, and a subject description," as in dependent claims 7 and 23).  (*See supra* at 6.)  Therefore, a review of claim 29 is sufficient for determining patent eligibility.

        2.        ***Alice* Step One: The Asserted Claims Are Drawn to an Abstract Idea.**

Each asserted claim of the '810 Patent is drawn to the same abstract idea: keeping track of time spent on billable client-related tasks.  This abstract idea is expressly recited in the claims' preambles.  Thus, the preamble of representative claim 29 describes a "method for *individual real time billable timekeeping* using a computer."  ('810 Patent at 12:15-16 (emphasis added).)  Tracking billable hours is, of course, a longstanding business practice for lawyers and other

professionals who bill clients on an hourly basis.  Indeed, the basic steps of representative claim 29—"detecting initiation of at least one telephone call" and "generating an individual timekeeper entry box" with a "personal code" and "client identifier" for "contemporaneously track[ing] time" spent on the telephone call—can be performed entirely by humans using only a pen, paper, and watch.  An attorney might "detect" that she is receiving a call from a client, "generate" a timekeeping record by writing down her employee code and the client's name on a piece of paper, and "contemporaneously track" the time spent on the telephone call by checking her watch and noting the start and end times on the piece of paper.  This "pen and paper" method is exactly what many attorneys and other professionals have traditionally done to keep track of their billable time.  The '810 Patent expressly acknowledges this when it observes that electronic timekeeping systems have evolved from the "traditional time log manually recorded on blank sheets of paper or on pre-formatted paper forms."  (*Id.* at 18-21.)

"[M]ethods of organizing human activity," however, are considered abstract ideas under *Alice* step one.  *Intellectual Ventures*, 792 F.3d at 1367.  This category of abstract ideas includes standard business practices used by professionals to organize their day-to-day work activities.  For example, in *WhitServe LLC v. Donuts Inc.*, 809 F. App'x 929, 931 (Fed. Cir. 2020), the patents described software that helped professionals, such as attorneys, keep track of and meet deadlines.  *Id.*  The representative claim recited a "device for automatically delivering professional services to a client," the device comprising software for querying a database of client reminders; sending, via the Internet, reminders to clients with approaching deadlines; including within those reminders a form for clients to give approval or further instructions regarding the approaching deadline; and receiving back, via the Internet, the client's response.  *Id.*  The Federal Circuit had little trouble concluding that the "focus" of the claims—"keeping

track of deadlines for clients and carrying out two-way communications with clients relevant to meeting those deadlines, using computers and networks to do so"—was a patent-ineligible abstract idea. *Id.* at 933.

Similarly, even before *Alice*, the Federal Circuit held as invalid claims reciting an automated system for "generating tasks to be performed in an insurance organization." *Accenture Glob. Servs. v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338-39 (Fed. Cir. 2013). The claimed system stored information on insurance transactions in a database. *Id.* Upon the occurrence of certain events related to a transaction, the system determined what tasks needed to be accomplished for that transaction and assigned those tasks to appropriate individuals. *Id.* Here, too, the Federal Circuit concluded that the concept "at the heart" of the claims— "generating tasks [based on] rules . . . to be completed upon the occurrence of an event"—was an abstract idea. *Id.* at 1344.

The idea of recording time spent on billable tasks is a rudimentary business practice for many professionals, no less so than, say, keeping track of client deadlines or generating task lists—activities held to be abstract ideas in *WhitServe* and *Accenture*, respectively. "And use of standard computers and networks to carry out those functions—more speedily, more efficiently, more reliably—does not make the claims any less directed to that abstract idea." *WhitServe*, 809 F. App'x at 933 (collecting cases).

Indeed, the focus of the '810 Patent is plainly on the abstract idea and not any improvement in *underlying computer functionality*. The patent does not purport to describe any specific new computing systems, software or hardware technology, or some other type of improvement in computer functionality. Instead, it merely implements the abstract idea on a generic computer. None of the asserted claims even purport to describe any specific software or

18

hardware components.  For example, representative claim 29 generically refers to a "method for individual realtime billable timekeeping *using a computer*, comprising a computer program for" performing certain routine timekeeping functions (*i.e.*, "detecting" a new telephone call and "generating an individual timekeeper entry box" for "contemporaneously track[ing] time" spent on the call).  ('810 Patent at 12:15-25 (emphasis added).)  The claimed "computer," then, is simply a generic "black box" for implementing the abstract idea of keeping track of one's billable time on a real-time basis.  *See, e.g.*, *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) (holding a claim to be directed to an abstract idea because the claimed "access checker" was a "black box" and "functional abstraction" that failed to describe "how to solve the problem" the patentee argued it addressed).  Said differently, what the asserted claims describe is not any specific "improvement in computer capabilities" but rather a "process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *Customedia Techs.*, 951 F.3d at 1365 (quoting *Finjan*, 879 F.3d at 1303).

A patent claiming "mere automation of manual processes using generic computers" is still drawn to a patent-ineligible abstract idea notwithstanding its use of computer technology. *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (holding claims to be directed to an abstract idea where, "with the exception of generic computer-implemented steps," nothing in the claims "foreclose[d] them from being performed by a human, mentally or with pen and paper.").  The '810 Patent falls squarely in this category of "quintessential 'do it on a computer patent[s].'"  *Univ. of Fla. Research Found., Inc. v. GE Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).  It takes a manual process—tracking a professional's billable time—and "simply proposes doing [it] with a computer."  *Id.*  Because the '810 Patent

19

claims this abstract idea without describing any "specific improvement to the way computers operate," it fails at *Alice* step one. *Id.* at 1367-68 (quoting *Enfish*, 822 F.3d at 1336).

        **3.**      **_Alice_ Step Two: The Asserted Claims Lack an "Inventive Concept" Sufficient to "Transform" the Abstract Idea Into a Patent-Eligible Application.**

For a patent to "transform" an abstract idea into a patent-eligible application of that idea, it must do more than computerize or automate a routine practice. Thus, "[s]tating an abstract idea while adding the words 'apply it with a computer'" is not enough to salvage a patent at *Alice* step two, either. *Alice*, 573 U.S. at 223. "[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent eligible." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014).

The asserted claims of the '810 Patent fail to pass muster at *Alice* step two because they do no more than implement the abstract idea of tracking billable hours "using some unspecified, generic computer." *Alice*, 573 U.S. at 225-26 (*Mayo*, 566 U.S. at 79). As discussed above at 18-19, representative claim 29 recites only an unspecified, generic "computer" comprising an unspecified, generic "computer program" for carrying out the basic functions of "detecting" a telephone call and "generating an individual timekeeper entry box" for "contemporaneously track[ing] time" spent on the call. ('810 Patent at 12:15-25.) However, reciting generic components such as a "computer," "software executing on said computer," and the like "provide[s] no eligibility-transformative inventive concept." *WhitServe*, 809 F. App'x at 934; *see also Mortg. Grader*, 811 F.3d at 1324 (holding that "generic computer components such as an 'interface,' 'network,' and 'database' . . . do not satisfy the inventive concept requirement").

The patent's specification does nothing to save the asserted claims. To start, "complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir.

2016) (citing *Accenture*, 728 F.3d at 1345). "[T]he important inquiry for a § 101 analysis is to look to the *claim*." *Accenture*, 728 F.3d at 1345 (emphasis added). In any event, the specification of the '810 Patent serves only to confirm that the computer used to implement the claimed timekeeping method is wholly generic. The components of the "computer device **100** for use in the invention" include "any commonly available micro-processor," which is "operatively connected" to generic "input devices" such as a "keyboard" and "mouse"; generic "output devices" such as a "display" and "printer"; and generic "memory" devices such as a "floppy disk," "hard disk drive," "CD-ROM disk," or "DVD disk." (*See supra* at 4.) There is nothing remotely "transformative" about any of these generic computer components either individually or in combination.

Nor do the conclusory statements in the Complaint create any factual issues that would preclude the asserted claims from being invalidated at the Rule 12(b)(6) stage. The Complaint briefly alleges that the '810 Patent provides "technological improvements in computer functionality" by implementing a "unique computer generated individual timekeeper entry box" and "protocols to enhance the integrity, authenticity and accuracy of an individual's task/service timekeeper entries on a realtime basis." (Complaint at ¶¶ 14-16.) The Court, however, need not accept these bare conclusions as true. *Secured Mail*, 873 F.3d at 913. Tellingly, the Complaint does not identify any concrete ways in which the patent "improve[s] the functioning of the computer itself." *Alice*, 573 U.S. at 225 (internal citation omitted). Rather, the patent achieves its purported benefits—"enhance[ing] the integrity, authenticity and accuracy" of a professional's time entries—using standard computer equipment. Realtime's conclusory allegation that its patent provides "technological improvements in computer functionality" is therefore flatly rebutted by the patent's specification.

As this Court has observed, "the straightforward implementation of the benefits of an abstract idea does not itself give rise to an inventive concept [at *Alice* step two], including when it is to be accomplished through generic computer equipment that performs the implementation of the abstract idea." *Quantum Stream, Inc. v. Charter Communs., Inc.*, 309 F. Supp. 3d 171, 187 (S.D.N.Y. 2018). It makes no difference whether tracking one's billable time using an automated computer program is more efficient than doing so using a pen, paper, and watch. The law is "clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility" on an otherwise abstract idea. *Id.* (quoting *Intellectual Ventures*, 792 F.3d at 1370); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").

Ultimately, the '810 Patent represents nothing more than an attempt to "monopolize" the abstract idea of using a computer to keep track of one's billable hours. The asserted claims recite only *what* the computer program does; they say nothing about the "*how*." When representative claim 29 recites a generic "computer program" residing on a generic "computer" and capable of performing certain timekeeping functions, it aims to describe the purported invention only at the "broadest, functional level, without explaining how that is accomplished, let alone providing a technical means for performing [those] function[s]." *Interval Licensing*, 896 F.3d at 1346. The asserted claims are thus "so abstract and sweeping" as to preempt virtually all ways of using a computer to carry out the recited steps. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (quoting *Gottschalk v. Benson,* 409 U.S. 63, 68 (1972)). This is precisely the kind of "invention" that § 101 jurisprudence prevents from being patented.

## V.    CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: March 28, 2022

Respectfully submitted,

*/s/ Ross A. Wilson*
Ross A. Wilson (NY Bar # 5013107)
Oleg Khariton (*pro hac vice* admission pending)
DINSMORE & SHOHL LLP
255 Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone:  (513) 977-8200
Facsimile:  (513) 977-8141
ross.wilson@dinsmore.com
oleg.khariton@dinsmore.com
*Attorneys for Defendant RELX Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 28, 2022, a true and correct copy of the foregoing document was served via the Court's CM/ECF system upon all registered counsel of record.

*/s/ Ross A. Wilson*
Ross A. Wilson (NY Bar # 5013107)
*Attorney for Defendant RELX Inc.*
